Filed 8/30/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION 3

| | |
|---|---|
| 24TH & HOFFMAN INVESTORS, LLC, et al., <br><br>     Plaintiffs and Respondents, <br><br> v. <br><br> NORTHFIELD INSURANCE COMPANY, <br><br>     Defendant and Appellant. | A163670 <br><br> (City & County of San Francisco Super. Ct. No. CGC-19-581415) |

Appellant Northfield Insurance Company (Northfield) issued a policy to respondent 24th & Hoffman Investors, LLC (24th & Hoffman, or the insured) to insure an apartment complex it owned. The policy's coverage excludes liability for violations of the insured's duty to maintain a habitable premises; this exclusion also encompasses coverage for "any claim or 'suit' " that also alleges habitability claims. Two tenants sued 24th & Hoffman, along with two of the LLC's members (collectively, respondents), alleging multiple habitability claims as well as other causes of action that were arguably not based on habitability. Northfield declined to defend the tenants' lawsuit, and, after settling the underlying action, respondents brought the current action against Northfield for breach of its duty to defend them. The primary question in this case is whether the phrase "any claim or 'suit' " in the habitability exclusion relieved Northfield of its obligation to provide a defense to the underlying action.

1

The trial court concluded the case presented a " 'mixed' " action containing both potentially covered and uncovered claims, and that Northfield was therefore obliged to provide a defense. (*Buss v. Superior Court* (1997) 16 Cal.4th 35 (*Buss*).) The court granted summary adjudication to respondents on this issue and entered judgment accordingly. We conclude the plain terms of the contract exclude all of the claims in the underlying action, and we accordingly reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    The Property

Respondents Adam Phillips and 366 Development, LLC are real estate developers. 24th & Hoffman is their joint venture, formed to invest in and develop San Francisco properties. One such investment property is a six-unit, residential compound at 24th Street and Hoffman Avenue (the apartments).

24th & Hoffman planned to buy out each of the tenants in the apartments, then renovate and sell the units. In December 2017, it purchased a "property and comprehensive liability insurance policy" from Northfield to insure the apartments. The same month, it began contacting tenants, and it soon reached agreements with five of the tenants to move out. However, the tenants of the sixth unit, Karen Lee and Aya Osada, decided to remain at the property. By mid-2018, renovations on the bought-out units had begun.

### II.    The Underlying Action

Lee and Osada (the underlying plaintiffs) brought an action against 24th & Hoffman, 366 Development, and Phillips in San Francisco Superior

Court (*Lee v. 24th and Hoffman Investors, LLC*, (Super. Ct. S.F. City & County, Case No. CGC-18-571219) (the underlying action)).[1]

The underlying complaint alleged that respondents allowed a variety of "substandard, indecent, offensive, and hazardous conditions" at the property. Some of those alleged conditions involved problems at the plaintiffs' apartment caused by the renovations: a broken window, obstruction of their windows, doors, and deck, and blocked light. Others involved physical intrusions on common spaces, such as the presence of trash, debris, construction materials, and tools, and dumping of construction waste at the property. The construction also allegedly caused frequent utility interruptions, a failure to secure the property or provide a closing and locking exterior door, destruction of the garden and plants, pest and vermin infestations, uncontained construction debris and dust (including lead-based and asbestos-containing dust), disruptively loud noise and vibration, and noxious odors and fumes. Other alleged wrongful acts were, on their face, not directly caused by the construction; for instance, the complaint alleged respondents stole and destroyed the underlying plaintiffs' personal property, and respondents sought to have the underlying plaintiffs provide testimony to assist them in evicting a neighboring tenant as a condition of providing buy-out funds. The claims for conversion and trespass to chattels were based on alleged damage to personal property stored in a locker that was—the parties later agreed—neither located in the plaintiff's unit nor authorized for use under their lease.

Based on these general allegations, the underlying plaintiffs asserted eleven causes of action: negligence; nuisance; breach of contract; breach of

---

[1] The action also named as defendants a construction company and its owners, who are not parties to this appeal.

3

the implied warranty of habitability; breach of the implied covenant of quiet enjoyment; statutory violations, based on conditions making the premises untenantable and the presence of lead hazards (Civ. Code, §§ 1941 & 1941.1; Health & Saf. Code, §17920.10); tenant harassment (San Francisco Admin. Code, § 37.10B); unfair business practices (Bus. & Prof. Code, §§ 17200, 17203); retaliation; conversion; and trespass to chattels.

## III.   Respondents' Tender and Northfield's Denial

Respondents tendered the defense of the underlying action to Northfield, which declined to defend it on the ground that it fell within the policy's exclusion of actions arising out of breach of the implied warranty of habitability.

The insurance policy provisions relevant here provide comprehensive general liability coverage to the insureds for allegations of bodily injury, property damage, and personal injury caused by an occurrence.  There is no dispute that the underlying action alleged causes of action that on their face fall within these provisions, but the policy contains exclusions for actions arising from breach of the implied warranty of habitability.  And, after stating that Northfield would defend and indemnify the insured in any " 'suit' " seeking covered damages, the bodily injury and property damage coverage continues, "However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."  The policy includes similar terms for claims of "personal and advertising injury liability."

As to each coverage at issue here, the policy excludes two kinds of claims.  First, it excludes claims "(1) [a]rising out of the:  [¶] (a) Actual or alleged violation of any federal, state or local law, code, regulation, ordinance or rule relating to the habitability of any premises; [¶] (b) Breach of any

4

lease, rental agreement, warranty or covenant to maintain a premises in a habitable condition; or [¶] (c) Wrongful eviction from, wrongful entry into or invasion of the right of private occupancy . . . due to failure to maintain a premises in a habitable condition." Second, it excludes claims (2) "[a]lleged in any claim or 'suit' that also alleges any violation, breach or wrongful eviction, entry or invasion as set forth in Paragraphs (1)(a)–(c) above." The effect of this final "catch-all" provision is at the heart of the dispute before us.

When Northfield rejected their tender, respondents defended the underlying action with their own counsel and reached a settlement of approximately $150,000.

## IV.    Procedural History

Respondents brought this action against Northfield on December 10, 2019, alleging that Northfield wrongfully denied coverage in the underlying action. They asserted causes of action for breach of contract, bad faith breach of insurance contract, negligence, and declaratory relief. After reaching a partial settlement, respondents dismissed the bad faith cause of action and the parties filed cross-motions for summary adjudication or judgment.

In their motion for summary adjudication, respondents argued that Northfield had a duty to defend them in the underlying action. In its motion for summary judgment, in turn, Northfield contended that the undisputed facts show that the "Habitability Exclusion" barred coverage for the underlying action.

The trial court granted respondents' motion for summary adjudication, finding as a matter of law that Northfield owed them a duty to defend in the underlying action. The court concluded that three of the causes of action—retaliation, conversion, and trespass to chattels—were not habitability

5

claims, and that in such a " 'mixed action,' " Northfield had a duty to defend the action in its entirety. (*Buss*, *supra*, 16 Cal.4th at pp. 48–49.)

Without prejudice to Northfield's right to appeal, the parties stipulated that the court's ruling established that Northfield had breached its contractual duty to defend the underlying action, that the resulting contract damages were $350,000, and that, to the extent there were any remaining disputed triable issues of fact, the parties would withdraw them and ask the trial court to dismiss all remaining causes of action and enter judgment. The trial court entered judgment in respondents' favor, and Northfield appealed.

## DISCUSSION

### I.    Legal Standards

The trial court's grant of summary adjudication is subject to de novo review. (*Paslay v. State Farm General Insurance Co.* (2016) 248 Cal.App.4th 639, 644.) Summary adjudication is proper if the undisputed evidence shows that there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (*First Street Plaza Partners v. City of Los Angeles* (1998) 65 Cal.App.4th 650, 659; Code Civ. Proc., § 437c, subd. (c).)

" 'In reviewing de novo a superior court's summary adjudication order in a dispute over the interpretation of the provisions of a policy of insurance, the reviewing court applies settled rules governing the interpretation of insurance contracts.' " (*County of San Diego v. Ace Property & Casualty Ins. Co.* (2005) 37 Cal.4th 406, 414.) In carrying out our review, we bear in mind that, "[w]hile insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply. [Citation.] The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264.) If possible, that intent is inferred "solely

6

from the written provisions of the contract. [Citation.] The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' [citation], controls judicial interpretation. [Citation.] Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning." (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 821–822 (*AIU*).)

An insurer ordinarily is free to limit the risks it assumes, and we do not rewrite any provision of any contract, including an insurance contract, for any purpose, including perceived public policy benefits. (*Underwriters of Interest Subscribing to Policy Number A15274001 v. ProBuilders Specialty Ins. Co.* (2015) 241 Cal.App.4th 721, 729 (*Underwriters of Interest*); *Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 967–968 (*Certain Underwriters*).) However, any ambiguity is generally resolved in favor of coverage. (*AIU Ins. Co.*, *supra*, 51 Cal.3d at p. 822.) We interpret the terms of an insurance policy de novo. (*Powerine Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377, 390.)

A liability insurer has a "broad duty to defend its insured against claims that create a potential for indemnity." (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295 (*Montrose*).) If, on the other hand, there is no potential for coverage, the insurer has no duty to defend. (*La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 40 (*La Jolla Beach & Tennis Club*).) This standard is met " 'if the third party complaint *can by no conceivable theory raise a single issue which could bring it within the policy coverage.*' " (*Montrose*, at p. 300.) Thus, the duty to defend is "not without limits"; rather, it is "limited by 'the nature and kind of

7

risk covered by the policy.' " (*La Jolla Beach & Tennis Club*, at p. 39, italics omitted.)

"The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." (*Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1081.)  Additionally, extrinsic facts known to the insurer may either give rise to a duty to defend or show conclusively there is no possibility a claim is covered by the policy.  (*Montrose, supra,* 6 Cal.4th at pp. 295, 298– 299.)  There may also be a duty to defend if "under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability." (*Scottsdale Insurance Co. v. MV Transportation* (2005) 36 Cal.4th 643, 654 (*Scottsdale*).)  We resolve any doubts about whether the facts establish a duty to defend in favor of the insured.  (*Montrose*, at pp. 299–300.)

## II.    Effect of the Habitability Exclusion

With these standards in mind, we consider whether the trial court was correct when it ruled the catch-all provision—excluding claims because they are alleged in a " 'suit' that also alleges" a violation or breach of a duty related to habitability—was unenforceable.

### A.    The Exclusion Was Plain, Clear, and Conspicuous

Respondents contend the catch-all portion of this exclusion may not be enforced because it is not plain, clear, or conspicuous.  An insurer " 'cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. . . .  [T]o be enforceable, any provision that takes away or limits coverage reasonably expected by an insured must be 'conspicuous, plain and clear.' [Citation.]  Thus, any such limitation must be placed and printed so that it will attract the reader's attention.  Such a provision also must be

stated precisely and understandably, in words that are part of the working vocabulary of the average layperson.  [Citations.]  The burden of making coverage exceptions and limitations conspicuous, plain and clear rests with the insurer." (*Haynes v. Farmers Ins. Exchange* (2004) 32 Cal.4th 1198, 1204 (*Haynes*).)  Exclusionary language is construed in the context of the policy as a whole, in the circumstances of the case, "and 'cannot be found to be ambiguous in the abstract.' " (*S.B.C.C., Inc. v. St. Paul Fire & Marine Ins. Co.* (2010) 186 Cal.App.4th 383, 397 (*S.B.C.C.*).)

We conclude, as did the trial court, that the exclusion is plain and clear. We find guidance in *S.B.C.C.*, which considered and upheld a similar catch-all exclusion regarding violations of certain intellectual property laws. (*S.B.C.C.*, at pp. 390–391.)  Rejecting a contention that the exclusion was not stated in clear and unmistakable language, the appellate court explained, "Here the challenged exclusion is clear and explicit; it expressly states that in addition to the listed forms of intellectual property infringement, there is no coverage for '*any other injury or damage that's alleged in any claim or suit which also alleges any such infringement or violation*." (*Id.* at p. 397.)  The exclusion before us is similarly plain and clear.  It is contained in an exclusion titled "**EXCLUSION—HABITABILTY OF PREMISES**," and the separate sections concerning the bodily injury or property damage liability and personal and advertising injury liability are labeled "**Habitability of Premises**."  The language of the catch-all provision in each section excludes injury or damages "[a]lleged in any claim or 'suit' that also alleges any violation, breach or wrongful eviction, entry or invasion as set forth in Paragraphs (1)(a)–(c) above," where the enumerated paragraphs specifically refer to the duty to maintain premises in a habitable condition.  This language, like that in *S.B.C.C.*, is clear.

Against this conclusion, respondents proffer a series of hypothetical situations under which the scope of coverage might not be clear or might change over time, and they argue the exclusion's lack of guidance in these scenarios means it is not clear. For instance, what if an action is filed against an insured alleging only covered claims, and a habitability claim is added only later? What if the habitability claim is later dismissed? If a tenant and guest both have claims for injuries from a fire caused by a landlord's negligence, does it make a difference if they bring their actions jointly or separately? However interesting these scenarios might be in the abstract, the short answer is that we consider policy terms in the circumstances of the case, not in the abstract, to determine if they are ambiguous. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18; *S.B.C.C.*, *supra*, 186 Cal.App.4th at p. 397.) The facts of *this* case present no ambiguity of the sort respondents posit. The habitability claims were integral to the underlying action from the start, and they were not dismissed before the case was settled.

Respondents also argue that the catch-all exclusion was not conspicuous because it was "buried" in an untitled subsection of the habitability exclusion. We disagree. The same contention was recently rejected in a federal district court case, *Northfield Ins. Co. v. Hudani* (C.D.Cal. 2021) 2021 U.S.Dist. Lexis 193435, pages *7, *11–*13 (*Hudani*),[2] which considered an exclusion identical to that before us now, with section 1 excluding habitability claims and section 2 excluding coverage for injures alleged in a claim or suit that also alleges habitability claims. The court

---

[2] We may cite unpublished federal decisions as persuasive, although not precedential, authority. (*Elkman v. National States Ins. Co.* (2009) 173 Cal.App.4th 1305, 1319, fn. 6.)

explained, "A policy limitation is conspicuous when 'placed and printed so that it will attract the reader's attention.' . . . [I]f section 1 of the exclusion is able to catch a reader's attention, it is hard to see why the reader would lose interest before reading section 2 of the exclusion. The two sections form the whole of the exclusion." (*Id.* at p. \*12, quoting *Haynes*, *supra*, 32 Cal.4th at p. 1204.) Moreover, the exclusion was listed in the endorsements and exclusions on page 2 of the policy, and it was located on its own page with bold and large font headings. (*Hudani*, at pp. \*12–\*13.) It was also, the district court concluded, placed in the logical portion of the policy, because the catch-all provision was best understood in the context of the habitability exclusion itself. (*Id.* at p. \*13.)

Similarly here, the habitability exclusion is listed in the schedule of forms and endorsements at the beginning of the policy documents. It is clearly marked "**EXCLUSION—HABITABILTY OF PREMISES**" and is on a separate page with a warning on the top line: "**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**." As to each coverage, the catch-all provision is in a separate numbered paragraph. And, as in *Hudani*, *supra*, 2021 U.S.Dist. Lexis 193435, the catch-all provision is logically related to the habitability exclusion itself. Respondents' contention that the exclusion is unenforceable because it is not conspicuous fails.

### B. None of the Claims is Potentially Covered

We next consider whether the underlying action pled claims that the policy potentially covers. Under the rule explained in *Buss*, the presence of even one potentially covered claim would impose on Northfield the duty to defend the underlying action.

In *Buss*, our high court considered the right of an insurer to seek reimbursement from an insured for defense costs. The Court ruled the

11

insurer may receive reimbursement only for costs that can be allocated solely to claims that are not even potentially covered. (*Buss*, *supra*, 16 Cal.4th at p. 39.) In the course of reaching its decision, the Court explained the rules governing the insurer's duty to defend an action in three situations: when all claims were potentially covered, when none was, and when some were. (*Id.* at pp. 47–48.) As to the first category, the insurer has a duty to defend, an obligation that is "express in the policy's language" and rests on the fact that the insured has paid premiums for a defense. (*Id.* at p. 47.) In the second category, where none of the claims is even potentially covered, the insurer need not defend. (*Ibid.*) In the third category, a " 'mixed' action," the insurer must defend, but the *contractual* duty extends *only* to those claims that are at least potentially covered. (*Id.* at p. 48.) Nevertheless, our high court imposed an obligation immediately to defend a mixed action in its entirety. This duty is not contractual, but rather is "imposed by law in support of the policy." (*Id.* at p. 49.) Imposing this duty ensures the policyholder has a meaningful, immediate defense of the claims that are potentially covered under the agreement the parties have made. An immediate defense requires that an insurer not "parse the claims, dividing those that are at least potentially covered from those that are not," but instead defend the entire action if even one claim is potentially covered. (*Ibid.*) Thus, the obligation to defend uncovered claims is expressly tethered to the contractual agreement to provide a defense to those claims that the policy *does* cover. It does not exist independently of the parties' contract, but rather exists to fulfill it.

The trial court here viewed the underlying action as a mixed one for purposes of the rule of *Buss* because, it found, three of the causes of action— for retaliation, conversion, and trespass to chattels—did not arise from the duty to provide habitable premises. We question that conclusion as to the

12

retaliation cause of action. Among other things, the underlying plaintiffs alleged respondents retaliated against them for complaining about conditions at the property, and one form the alleged retaliation took was a decrease in housing services. But even if this claim implicates the duty to provide habitable premises, it seems the causes of action for conversion and trespass to chattels do not. They are based on damage to personal property the underlying plaintiffs stored in a locker they were not authorized under their lease to use. These claims make no mention of, and do not rely on, substandard conditions at the property. We will assume for purposes of our discussion that the trial court was correct that at least these two claims do not themselves arise from habitability. Nevertheless, as we shall explain, the court erred in concluding the underlying action alleged potentially covered claims.

The most pertinent case decided by a court of this state is *S.B.C.C.*, which considered an insurance policy that excluded not only violations of specified intellectual property laws but also " 'any other injury or damage that's alleged in any claim or suit which also alleges any such infringement or violation.' " (*S.B.C.C.*, *supra*, 186 Cal.App.4th at p. 397, italics omitted.) The appellate court found the exclusion clear and explicit, and concluded that, because the underlying complaint included such intellectual property allegations, the policy did not offer coverage for any of the causes of action alleged in the complaint. (*Id*. at pp. 396–397.) Similarly in the policy at issue here, the catch-all provision excludes coverage for *any* of the causes of action alleged in the underlying action because the action includes habitability claims.

Respondents seek to distinguish *S.B.C.C.* on the ground that the exclusion there expressly stated it did not apply to certain bodily injury,

13

property damage, and advertising injury claims.  As a result, respondents argue, there was no ambiguity in the policy in *S.B.C.C.*  (*S.B.C.C.*, *supra*, 186 Cal.App.4th at pp. 390–391.)  We do not see the force of this argument, as we have already concluded that the language in the exclusion before us is *not* ambiguous.  Nor are we persuaded by respondents' effort to discount this portion of *S.B.C.C.* as mere dicta.  Our reading of the case tells us it is part of the court's reasoning; indeed, the catch-all provision is the reason the *S.B.C.C.* court was untroubled by the insured's argument that "only one of [the] claims was for trade secrets violation."  (*Id*. at p. 396.)

Because of the paucity of cases from California state courts considering the effect of similar catch-all provisions in insurance contracts, we look to federal cases for insight.  A number have considered the effect of similar provisions, and most have found them enforceable and concluded they negated the insurer's duty to defend an action.  (See, e.g., *Hudani*, *supra*, 2021 U.S.Dist. Lexis 193435 at pp. *8–*14 [identical habitability exclusion enforceable]; *Great American E&S Ins. Co. v. Theos Medical Systems, Inc.* (N.D.Cal. 2019) 357 F.Supp.3d 953, 969–972 [intellectual property catch-all exclusion barred coverage of entire action]; *Pinnacle Brokers Ins. Solutions LLC v. Sentinel Ins. Co., Ltd.* (N.D.Cal. Sep. 2, 2015, No. 15-cv-02976-JST) 2015 U.S.Dist. Lexis 117299, p. *10 (*Pinnacle*) [intellectual property catch-all exclusion "clear and explicit, and therefore governs"]; *Tria Beauty, Inc. v. Nat. Fire Ins. Co.* (N.D.Cal. May 20, 2013, No. C 12-05465 WHA) 2013 U.S.Dist. Lexis 71499, pp. *22–23 [claim need not have logical or legal link to intellectual property cause of action for catch-all exclusion to apply]; *Molecular Bioproducts, Inc. v. St. Paul Mercury Ins. Co.* (S.D.Cal. July 9, 2003, No. 03-0046-IEG (LSP)) 2003 U.S.Dist. Lexis 27903, p. *13 [intellectual property catch-all exclusion is "clear and explicit" and insured therefore not

entitled to defense]; see also *Hartford Cas. Ins. Co. v. Dental USA, Inc.* (N.D.Ill. June 24, 2014, No. 13 C 7637) 2014 U.S.Dist. Lexis 85529, pp. *13–*16 [rejecting claim that catch-all exclusion made insurance policy illusory]; *Ventana Medical Systems v. St. Paul Fire & Marine Ins. Co.* (D.Ariz. 2010) 709 F.Supp.2d 744, 757–759, affd. (9th Cir. 2011) 454 Fed.Appx. 596.)

Despite these authorities, respondents contend that, because some of the underlying claims did not arise out of habitability issues, the underlying action was a mixed action under the rule of *Buss*, and Northfield was obliged to defend them. They rely primarily on two cases. In *Saarman Construction, Ltd. v. Ironshore Specialty Insurance Co.* (N.D.Cal. 2017) 230 F.Supp.3d 1068, an action was brought against the insured party, Saarman, for negligent repair work that resulted in water damage to the plaintiff's property, causing mold growth and other property damage. (*Id.* at pp. 1077–1078.) Saarman tendered the defense to its insurer, Ironshore Specialty Insurance Co., which denied coverage based on an exclusion of "any claim, demand, or 'suit' alleging . . . 'Bodily Injury,' [or] 'Property Damage' . . . arising out of, in whole or in part, the actual, alleged, or threatened . . . existence of any mold." (*Id.* at p. 1178.) Applying California law, the district court concluded the insurer could not rely on this language to avoid its duty to defend a mixed action that included a covered claim for water damage. According to the court, the rule of *Buss* prevented insurers from "contract[ing] around their duty to defend mixed actions in this way," because the obligation to defend "is not even rooted in the contractual language itself, but rather is 'imposed by law in support of the policy.' " (*Saarman*, at p. 1080, quoting *Buss*, *supra*, 16 Cal.4th at p. 48.) Thus, language in the mold exclusion barring coverage for claims that did not depend on allegations

15

regarding mold was, in the court's view, unenforceable.  (*Saarman*, at p. 1080.)

The other case on which respondents primarily rely, *Conway v. Northfield Ins. Co.* (N.D.Cal. 2019) 399 F.Supp.3d 950, considers the effect of an insurance policy issued by Northfield that included a habitability exclusion with a catch-all provision identical to that before us now.  (*Id.* at p. 957.)  The insured was sued by a tenant, who alleged claims as to both her residential premises and her commercial premises, both covered by the lease.  (*Id.* at p. 955.)  Important to the court's decision, the tenant's habitability claims, such as power outages and lack of proper ventilation, related only to the *residential* premises.  (*Id.* at p. 966.)  The district court concluded that the habitability exclusion did not preclude coverage for claims related to the *commercial* premises, stating, "The mere fact that a habitability issue may exist in a complaint is insufficient to satisfy the exclusion."  (*Id.* at p. 967.)

*Saarman* and *Conway* do not persuade us that this is a mixed action Northfield was obligated to defend under the rule of *Buss*.  We reiterate that an insurer is free to limit the risk it assumes by contract, and we may not rewrite the contract for any purpose.  (*Certain Underwriters*, *supra*, 24 Cal.4th at pp. 967–968; *Underwriters of Interest*, *supra*, 241 Cal.App.4th at p. 729.)  The policy excludes all claims in a suit that alleges violations of the duty to provide a habitable premises, and such claims were unquestionably alleged in the complaint in the underlying action.  Thus, by the plain terms of the insurance contract, *none* of the causes of action is potentially covered because *all* are excluded by one portion or the other of the habitability provision—either because they allege habitability violations (excluded in paragraph 1(a)–(c)) or because they appear in the same lawsuit as claims that allege habitability violations (excluded in paragraph 2).

16

This conclusion does not run afoul of *Buss*; it renders *Buss* irrelevant. *Buss* found a duty to mount a defense even of uncovered claims "in support of the policy"—that is, in support of the obligations the insurer was paid to assume. (*Buss*, *supra*, 16 Cal.4th at p. 49.) But that reasoning has no application to obligations the insurer did *not* assume. The proper question before us, then, is not whether the underlying plaintiffs' claims for retaliation, conversion, and trespass to chattels would have been potentially covered in the absence of the habitability exclusion; it is whether they are potentially covered under the policy to which the parties actually agreed. The answer to that question is no. These claims are not covered because they are alleged in a suit that also alleges habitability claims. Any other result would have us find a duty to defend "in the air," independent of Northfield's contractual obligations. (See *Buss*, at p. 48.) The rule of *Buss* is therefore inapplicable, and Northfield had no duty to defend respondents. To the extent that *Saarman* and *Conway* are inconsistent with this conclusion, we respectfully disagree with them, and follow instead the reasoning of *Hudani*, *S.B.C.C.*, and *Pinnacle* (which was authored by the same judge as *Saarman*), and the other federal cases cited above.

In an effort to avoid this result, respondents argue Northfield was obliged to defend them because the underlying plaintiffs could have amended their complaint to withdraw all habitability claims and proceeded only on the causes of action for conversion and trespass to chattels. They rely on *Scottsdale*, *supra*, 36 Cal.4th at page 654, which explains that a duty to defend arises if under the facts alleged, reasonably inferable, or known, the complaint could be amended to state a covered claim. But an insured "may not trigger the duty to defend by speculating about . . . ways in which the third party claimant might amend its complaint at some future date."

17

(*Gunderson v. Fire Ins. Exchange* (1995) 37 Cal.App.4th 1106, 1114; accord, *Advent, Inc. v. National Union Fire Ins. Co. of Pittsburgh* (2016) 6 Cal.App.5th 443, 460.)  It is speculative in the extreme to suggest the underlying plaintiffs would withdraw the habitability claims—nine of 11 causes of action—that form the backbone of their complaint.  *Scottsdale* does not require Northfield to engage in such speculation.

We recognize the oddity of an insurance contract that covers certain claims against the insured if those claims are filed in a lawsuit on their own, and not if such claims are brought in a suit that also alleges habitability claims.  But we know of no California authority that prevents the parties from contracting for such coverage, as they did here.  Indeed, respondents do not dispute that the catch-all provision limits *indemnity* benefits where habitability claims are brought alongside other claims.  And if there is no potential for indemnity coverage on any of the claims in the underlying action, then Northfield has no duty to defend it.  (See *La Jolla Beach & Tennis Club*, *supra*, 9 Cal.4th at p. 40.)

## DISPOSITION

The judgment is reversed.  Appellant shall recover its costs on appeal.


TUCHER, P.J.


WE CONCUR:

PETROU, J.
RODRÍGUEZ, J.


*24th Street & Hoffman Inv., LLC et al. v. Northfield Ins. Co.* (A163670)


18

Trial Court:        City & County of San Francisco Superior Court

Trial Judge:        Hon. Ethan P. Schulman

Counsel:        Hinshaw & Culbertson, Ray Tamaddon Defendant and
                Appellant

                Pacific Law partners, Clarke B. Holland, Jenny J. Chu, and
                Amanda C. Glenn for Plaintiffs and Respondents