Filed 5/30/14  RDPH Properties v. Net Lease Capital Advisors CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| RDPH PROPERTIES, INC.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>NET LEASE CAPITAL ADVISORS, INC., et al.,<br><br>    Defendants and Respondents. | B248712<br><br>(Los Angeles County<br>Super. Ct. No. BC457819) |

APPEAL from an order of the Superior Court of Los Angeles County.  Robert Hess, Judge.  Affirmed.

———

Glickman & Glickman and Steven C. Glickman; Lozoya & Lozoya and Frank J. Lozoya IV for Plaintiff and Appellant.

Perkins Coie, James D. DeRoche and Amir Gamliel for Defendants and Respondents.

———

RDPH Properties, Inc. (RDPH) sued Net Lease Capital Advisors, Inc. (NLCA) and Dr. Henry Lui in Los Angeles County Superior Court. NLCA and Dr. Lui moved to quash service of summons based on a lack of personal jurisdiction. The trial court granted the motion to quash, and RDPH appealed from the order. We agree that personal jurisdiction over NLCA and Dr. Lui is lacking and thus affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

1.     *RDPH's Complaint*

RDPH, a California corporation, filed a complaint on March 22, 2011, alleging, among other causes of action, breach of contract and fraud against R2 Lui, LLC, a Delaware limited liability company with its principal place of business in Nashua, New Hampshire, and John Hyslip, R2 Lui's manager.

According to the complaint, before March 13, 2002, R2 Lui acquired the beneficial interest in and to the CRICQ Arlington Trust (CRICQ), a Delaware business trust doing business as CRICQ Arlington, LLC, which previously had owned real property in Texas. On or about March 13, 2002, RDPH and R2 Lui, in California, entered into an "Agreement to Convey" 100 percent of R2 Lui's beneficial interest in CRICQ to RDPH in an Internal Revenue Code section 1031-type exchange.

Paragraph 15 of the Agreement to Convey stated "Seller and Buyer represent that they have dealt with no broker in connection with this Agreement." Paragraph 8(b) of the Agreement to Convey provided RDPH an option to prepay the purchase price balance of the contract, in part or in full, subject to certain fees, penalties, or other charges imposed by the lender. In or about July 2010 and in February 2011, RDPH advised R2 Lui that it was electing to prepay the purchase price balance. R2 Lui refused RDPH's tender and performance based on a dispute over the payment amount. RDPH alleged that R2 Lui's refusal constituted a breach of the Agreement to Convey. RDPH also alleged that R2 Lui had made false representations before entering the Agreement to Convey by failing to obtain necessary lender approval for its acquisition of the beneficial interest in CRICQ.

During discovery, RDPH filed a fourth amended complaint on May 17, 2012, adding as defendants Dr. Henry Lui, Hyslip's brother-in-law and an individual and

2

resident of Tennessee and former member of R2 Lui, and NLCA, a New Hampshire corporation with its principal place of business in Nashua, New Hampshire. Against Dr. Lui, RDPH alleged causes of action for breach of contract, breach of warranties and representations, and fraud and deceit. Against NLCA, RDPH alleged a cause of action for violation of Business and Professions Code section 17200 et seq.[1]

According to the allegations in the fourth amended complaint, starting in or about 2001, NLCA engaged in the unlicensed business of a real estate agent in California and its failure to obtain a license was unlawful and thus a violation of Business and Professions Code section 17200. NLCA engaged in the allegedly unlawful conduct by allowing Hyslip, between 2001 and March 2002, to represent to RDPH through use of NLCA's New Hampshire office and telephone system, an email address with an NCLA domain and letters sent with the NLCA office address as his mailing address that he was employed by NLCA when in fact he was not an employee but an independent contractor. NLCA also split commissions with Hyslip. RDPH alleged that NLCA's conduct was related to the Agreement to Convey and sought restitution of commissions received by NLCA with respect to the Agreement to Convey.

Regarding Dr. Lui, the fourth amended complaint alleged that he was liable for R2 Lui's failure to perform under the Agreement to Convey based on his partial ownership in R2 Lui and through alter ego liability. RDPH alleged that, Dr. Lui, among other things, falsely represented to RDPH that R2 Lui had authority to enter into the Agreement to Convey when it had failed to obtain lender approval.

---

[1]     The fourth amended complaint also added as defendants Lori Hyslip, the wife of Hyslip, and Bruce McDonald and Doug Blough, the principals of NLCA. Gigi Lui, the wife of Dr. Lui, apparently was added as a defendant after the filing of the fourth amended complaint. The fourth amended complaint specified the causes of action against R2 Lui and Hyslip as breach of contract, breach of warranties and representations, fraud and deceit, specific performance, declaratory relief, and reformation and an additional cause of action against Hyslip for violation of Business and Professions Code section 17200 et seq.

2.     *The Motion to Quash, Opposition and the Trial Court's Ruling*

NLCA and Dr. Lui moved to quash service of summons on the ground that California lacked personal jurisdiction over them.  They argued that the traditional forms of personal jurisdiction were lacking and that they did not have minimum contacts with California to warrant general or specific personal jurisdiction.

NLCA presented evidence that it was incorporated in New Hampshire in 1997 and since that date has had its principal place of business in that state.  It maintains offices in New Hampshire and New York and has never had an office or a bank account, paid taxes, or had its officers or directors reside in California.  NLCA has never been registered or licensed to do business in California, nor has it engaged in business as a real estate agent or broker within the state.  NLCA does not advertise in any California-specific trade journals or publications.  It does not maintain an office mailing address, agent for service of process, telephone number, employees, or sales representatives in California.  Between 2001 and 2002, the time of negotiation and completion of the Agreement to Convey, the extent of NLCA's contact with California consisted of two real estate transactions involving California properties.  Those deals did not relate to RDPH, R2 Lui, the Agreement to Convey, or CRICQ.  Neither NLCA nor its agents or employees traveled to or performed any broker services in California in connection with the purchase of either of the two properties.  The property sellers were companies based in Texas and any fee paid to NLCA was for services performed in New Hampshire.  NLCA also contacted California-based brokers for other prospective real estate deals and ultimately entered into several transactions regarding California properties.  Nevertheless, before NLCA received RDPH's fourth amended complaint, no NLCA principals had heard of or been in contact with RDPH or its officers, directors, employees, or representatives, or had engaged R2 Lui, Hyslip or any other party regarding RDPH or the Agreement to Convey.  NLCA did not receive a commission or other remuneration in connection with the contract or own an interest in CRICQ.

As to Dr. Lui, he has lived and been domiciled in Tennessee since 1996, has not lived or filed taxes in California since 1991, and has not owned or leased any property or

4

maintained any bank, savings, loan or investment account in California since about the time he moved out of the state. Dr. Lui is a full-time cardiologist with a medical practice confined to Tennessee. From 2001 through 2012, Dr. Lui visited California once or twice a year to attend medical conferences or film festivals or to visit his late mother. Although Dr. Lui was a member of R2 Lui from October 2001 to January 2007, he acted entirely as a silent investor. He never served as a manager and had little to no input regarding R2 Lui's investments, operations or transactions. Hyslip had constant and full managerial control over R2 Lui. Dr. Lui was periodically informed about the business and sought out for signature approvals by Hyslip, but not for R2 Lui's financial documents. Regarding the Agreement to Convey, Dr. Lui was not involved in its negotiation, never had contact with RDPH or anyone affiliated with it before his deposition in this case in October 2011, and had no recollection of ever hearing about RDPH, the Agreement to Convey, the RDPH principal involved in the transaction or the property.

RDPH opposed the motion to quash, conceding that traditional forms of personal jurisdiction did not exist, but arguing that NLCA's and Dr. Lui's contacts with California established both general and specific personal jurisdiction. According to RDPH, NLCA's principals entered and systematically targeted California and its residents multiple times to derive commercial and personal benefit. In addition, an NLCA principal may have referred RDPH's attorney to Hyslip, which ultimately resulted in the Agreement to Convey. Further, Hyslip communicated with RDPH multiple times between January 9 and February 15, 2002 with an email address containing an NLCA domain, through telephone calls made from NLCA's New Hampshire office and by letters with the NLCA office as his mailing address.

As to Dr. Lui, RDPH argued that he had sufficient contacts with California as an owner of R2 Lui at the time of the Agreement to Convey and at one point after the Agreement to Convey was entered a 99.9 percent owner. He also signed an R2 Lui operating agreement connected to the Agreement to Convey. RDPH further maintained

5

that Dr. Lui should be subject to jurisdiction as an alter ego of R2 Lui because R2 Lui had generally appeared and was a sham company.

The trial court granted the motion to quash. RDPH timely appealed from the order.[2]

**DISCUSSION**

1.    *The Exercise of Personal Jurisdiction and a Motion to Quash for Lack Thereof*

California courts may exercise personal jurisdiction over a nonresident defendant to the extent allowed under the state and federal Constitutions. (Code Civ. Proc., § 410.10.) Traditional personal jurisdiction exists when a defendant (1) is served while physically present in California; (2) is domiciled in California when the suit is commenced; or (3) consents to jurisdiction or appears in the action. (*J. McIntyre Machinery, Ltd. v. Nicastro* (2011) 131 S.Ct. 2780, 2787.) If traditional grounds are absent, as is conceded in this case, the exercise of personal jurisdiction is constitutionally permissible if the defendant has sufficient "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.' [Citations.]" (*Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310, 316.) Minimum contacts exist when the defendant's contacts with the forum state are such that the defendant had "'fair warning'" that its activities might subject it to personal jurisdiction in the state. (*Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 472; accord, *World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, 297.) "Each defendant's contacts with the forum [s]tate must be assessed individually. [Citation.]" (*Calder v. Jones* (1984) 465 U.S. 783, 790.) Under the minimum contacts test, personal jurisdiction may be either general or specific. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 445 (*Vons*).)

---

**2**    Other defendants—Lori Hyslip, Gigi Lui, Bruce McDonald, and Doug Blough—were included in the motion to quash, and the trial court granted the motion as to them as well. In its appellate briefs, however, RDPH argues for reversal of the order granting the motion to quash only as to NLCA and Dr. Lui and states it does not seek reversal as to any of the other defendants. RDPH's action is proceeding against R2 Lui and Hyslip, who appeared in the case and were not part of the motion to quash.

General jurisdiction, meaning the cause of action need not be related to defendant's contacts, exists if the defendant has had substantial, continuous, and systematic contacts with the forum state. (*Perkins v. Benguet Mining Co.* (1952) 342 U.S. 437, 445-447; see *Vons*, *supra*, 14 Cal.4th at p. 445.) The defendant's contacts must be wide-ranging so as to take the place of physical presence in the forum state. (*DVI, Inc. v. Superior Court* (2002) 104 Cal.App.4th 1080, 1090.) The defendant's affiliations must be so "'continuous and systematic' as to render [it] essentially at home in the forum [s]tate." (*Goodyear Dunlop Tires Operations, S. A. v. Brown* (2011) 131 S.Ct. 2846, 2851.) Factors considered are "'whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there.' [Citations.]" (*Elkman v. National States Ins. Co.* (2009) 173 Cal.App.4th 1305, 1315.)

Specific jurisdiction exists if there is a sufficient nexus among the defendant, the state, and the litigation. (*BBA Aviation PLC v. Superior Court* (2010) 190 Cal.App.4th 421, 435-436 (*BBA Aviation*), citing *Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1062; see *Walden v. Fiore* (2014) 134 S.Ct. 1115, 1121.) Specific jurisdiction hinges on the quality and nature of the defendant's forum contacts in relation to the alleged cause of action. (*Cornelison v. Chaney* (1976) 16 Cal.3d 143, 147-148.) This "relationship must arise out of contacts that the 'defendant *himself*' creates with the forum [s]tate. [Citations.]" (*Walden*, at p. 1122.) "[T]he plaintiff cannot be the only link between the defendant and the forum." (*Ibid.*) "Due process limits on the [s]tate's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties. [Citation.]" (*Ibid.*)The "'minimum contacts' analysis looks to the defendant's contacts with the forum [s]tate itself, not the defendant's contacts with persons who reside there. [Citations.]" (*Ibid.*) "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction. [Citation.]" (*Id.* at p. 1123.) A court may exercise specific jurisdiction over a nonresident defendant only if: "(1) the defendant has purposefully availed itself of forum benefits with respect to the matter in controversy; (2) the

7

controversy is substantially related to or arises out of the defendant's contacts with the forum; and (3) the assertion of jurisdiction would comport with fair play and justice. [Citations.]" (*BBA Aviation*, at p. 436.)

When a nonresident defendant challenges personal jurisdiction by a motion to quash, the plaintiff must prove the factual basis justifying the exercise of jurisdiction by a preponderance of the evidence. (*BBA Aviation*, *supra*, 190 Cal.App.4th at p. 428.) "The plaintiff must do more than merely allege jurisdictional facts; the plaintiff must provide affidavits and other authenticated documents demonstrating competent evidence of jurisdictional facts. [Citation.]" (*Id.* at pp. 428-429.) If the plaintiff meets this burden, "the burden shifts to the defendant to present a compelling case that the exercise of jurisdiction would be unreasonable. [Citation.]" (*Id.* at p. 429.) When jurisdictional facts are not in conflict, personal jurisdiction is a question of law reviewed de novo; if jurisdictional facts are in dispute, the trial court's factual determinations are reviewed for substantial evidence, while legal conclusions are reviewed de novo. (*Ibid.*)

2.    *No General Jurisdiction Over NLCA or Dr. Lui*

According to the evidence submitted in connection with the motion to quash, NLCA is incorporated in New Hampshire, not California. NLCA's officers and directors do not reside in California. NLCA has never been registered or licensed to do business in California, nor has it engaged in business as a real estate agent or broker within the state. NLCA does not maintain a bank account in California. NLCA has never paid taxes in California. NLCA does not advertise in any California-specific trade journals or publications. NLCA does not maintain an office mailing address, agent for service of process, telephone number, employees, or sales representatives in California. These facts demonstrate that general jurisdiction over NLCA is lacking.

RDPH points out that NLCA's principals attended national real estate forums in California. Those visits are insufficient for general jurisdiction because they were few and sporadic. During 2001 to 2002, although NLCA entered two deals with non-California entities involving California properties, the property sellers were Texas-based companies and any fee paid to NLCA was for services performed in New Hampshire. In

8

addition, although NLCA sought and eventually entered into several deals with California companies, "engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders." (*Bancroft & Masters, Inc. v. Augusta Nat. Inc.* (9th Cir. 2000) 223 F.3d 1082, 1086, overruled on other grounds by *Yahoo! v. La Ligue Contre Le Racisme* (9th Cir. 2006) 433 F.3d 1199, 1206-1207.)  RDPH's evidence does not demonstrate substantial, systematic and continuous conduct for general jurisdiction.

Similarly, Dr. Lui's contacts with California do not equate to a physical presence within the state.  Dr. Lui has not resided or owned property in California since 1991.  He has not filed taxes, maintained bank accounts, or conducted business in California since 1991.  Since 2001, Dr. Lui has intermittently traveled to the state for personal reasons and for business related to his medical practice.  Those trips, however, are not substantial, continuous, and systematic conduct with California.

3.      *No Specific Jurisdiction Over NLCA or Dr. Lui*

NLCA and Dr. Lui defeated specific jurisdiction by demonstrating that the controversy over the Agreement to Convey did not arise out of or was not substantially related to their contacts with California.  (See *BBA Aviation*, *supra*, 190 Cal.App.4th at p. 436.)  This relatedness requirement is satisfied if there is a substantial nexus between defendant's forum contacts and the plaintiff's claim.  (*Cornelison v. Chaney*, *supra*, 16 Cal.3d at p. 149.)  We agree that specific jurisdiction is absent based on RDPH's failure to satisfy the relatedness requirement.

RDPH argues that NLCA was intimately involved in the Agreement to Convey because one of NLCA's principals may have referred RDPH's attorney to Hyslip, who through R2 Lui entered into the Agreement to Convey with RDPH.  It also relies on evidence that Hyslip communicated with RDPH between January 9 and February 15, 2002 in negotiating the Agreement to Convey by use of an email address containing NLCA's domain, letters identifying NLCA's New Hampshire office as his mailing address, and telephone calls made from that office.  NLCA was aware that Hyslip communicated with prospective clients in these manners, whether as an independent

9

contractor for NLCA or in connection with his separate and independent dealings, and the arrangement between NLCA and Hyslip continued until 2009.

This evidence is insufficient to establish specific personal jurisdiction. Hyslip was not an NLCA employee from 2001 to 2002. His general practice of working from NLCA's New Hampshire office does not make NLCA a party to the Agreement to Convey. No evidence supports RDPH's argument that it entered the Agreement to Convey with Hyslip in his perceived capacity as an NLCA employee as opposed to his independent role as a member of R2 Lui. Indeed, no evidence shows that NLCA or its principals were involved in any of Hyslip's communications with RDPH. And any referral of RDPH's attorney to Hyslip by an NLCA principal does not suggest that NLCA was involved in the Agreement to Convey. In fact, the evidence is to the contrary. NLCA principals were not aware of the Agreement to Convey, nor did NLCA broker the Agreement to Convey, as the contract specified that no broker was involved with either party. Further, aside from RDPH being a California corporation, no relationship exists between California and the Agreement to Convey because the property is in Texas.

RDPH also contends that NLCA received a commission based on the Agreement to Convey and thus had a connection to the contract. But any commission received by NLCA related only to R2 Lui's acquisition of the property. It did not relate to the Agreement to Convey. NLCA was not involved in R2 Lui's reselling of the property to RDPH, and, as noted, NLCA's principals knew nothing of the Agreement to Convey. As a result, whether a commission was paid to NLCA in connection with R2 Lui's acquisition of the property does not implicate NLCA in the Agreement to Convey.

Specific jurisdiction also is lacking over Dr. Lui because his contacts with California did not give rise to and were not substantially related to the Agreement to Convey or its alleged breach. Although Dr. Lui was one of two members of R2 Lui, jurisdiction over the company does not result in jurisdiction over Dr. Lui, as each defendant's contacts with the forum state are assessed individually. (*Calder v. Jones*, *supra*, 465 U.S. at p. 790.) Dr. Lui was a passive investor in R2 Lui, which he owned with Hyslip, who, as noted, undertook all managerial tasks. Dr. Lui never visited the

10

Texas property in the Agreement to Convey. Dr. Lui did not keep or maintain the books or records of R2 Lui and has never seen a financial or bank statement for R2 Lui. Before this case, Dr. Lui did not recall that R2 Lui had entered into a deal with RDPH and was not familiar with the RDPH principal involved in the Agreement to Convey. Although Dr. Lui at one point after the date of the Agreement to Convey owned 99.9 percent of R2 Lui, the large majority ownership did not indicate any shift in responsibilities from Hyslip to Dr. Lui, as Hyslip at all times remained R2 Lui's manager. Dr. Lui had limited, if any, input or involvement in R2 Lui's transactions and investments. Dr. Lui signed an R2 Lui operating agreement related to the Agreement to Convey but did so simply in his passive role in R2 Lui without any knowledge of or connection to the negotiation or completion of the Agreement to Convey. And he was not a party to the contract. Dr. Lui's interest in R2 Lui was bought out in 2007. As a result, to the extent RDPH's causes of action against him relate to R2 Lui's failure to perform under the Agreement to Convey, they accrued years after Dr. Lui's connection to R2 Lui ended. Finally, as discussed, Dr. Lui's contact with California for decades has been confined to intermittent trips for personal reasons or business related to his medical practice.[3]

RDPH's contention that Dr. Lui is subject to personal jurisdiction as the alter ego of R2 Lui also fails. Although a court can pierce the corporate veil to find personal jurisdiction, a corporate officer "'"will not be liable for torts in which he does not personally participate, of which he has no knowledge, or to which he has not consented."'" (*Seagate Technology v. A.J. Kogyo Co.* (1990) 219 Cal.App.3d 696, 701

---

[3] RDPH claims that NLCA may have had an office in San Diego for an unknown period of time. Even if true, such an office fails to establish general jurisdiction because it does not constitute substantial, systematic and continuous conduct in California, nor does it establish specific jurisdiction because RDPH failed to show its causes of action arose out of or were substantially related to NLCA's contacts in California. Similarly, the choice of law provision in the Agreement to Convey selecting California law as the governing law does not establish jurisdiction over NLCA or Dr. Lui. Because neither NLCA nor Dr. Lui was a party to the Agreement to Convey, the provision does not suggest California should exercise jurisdiction over them.

11

(*Seagate Technology*).)  An officer is """"immune unless he authorizes, directs, or in some meaningful sense actively participates in the wrongful conduct.""""  (*Ibid*.)  Piercing the corporate veil requires "(1) such a unity of interest and ownership between the corporation and its equitable owner that no separation actually exists, and (2) an inequitable result if the acts in question are treated as those of the corporation alone. [Citation.]"  (*Leek v. Cooper* (2011) 194 Cal.App.4th 399, 417.)  There must be some bad faith conduct to render it inequitable for the officer to hide behind the corporate form and not be held liable for the corporation's wrongdoing.  (*Id*. at p. 419.)

RDPH argues that Dr. Lui is R2 Lui's alter ego because the company was a shell or sham entity that failed to observe even a modicum of corporate formality.  Even if RDPH's characterization of R2 Lui were true, such does not justify personal jurisdiction over Dr. Lui.  As noted, Dr. Lui's was a passive investor in R2 Lui.  No evidence suggests that Dr. Lui was involved in, let alone acted in bad faith regarding, the Agreement to Convey or R2 Lui's relationship with RDPH.  His signing of the R2 Lui operating agreement related to the Agreement to Convey is equivalent to ratification of an act taken by the company or by another officer, which is insufficient for personal jurisdiction.  (*Seagate Technology*, *supra*, 219 Cal.App.3d at pp. 703-704.)  RDPH's action against R2 Lui and Hyslip is continuing.  Under these circumstances, protecting Dr. Lui by the corporate shield is not inequitable.

## DISPOSITION

The order is affirmed.  Respondents are entitled to recover their costs on appeal.  NOT TO BE PUBLISHED.

                                                                ROTHSCHILD, Acting P. J.

We concur:


CHANEY, J.                                        JOHNSON, J.


12