Filed 11/8/24  D-1280X v. Envirosave Enterprises CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| D-1280X, INC., | B332265 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 23LBCV00479) |
| v. | |
| ENVIROSAVE ENTERPRISES, LLC et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael P. Vicencia, Judge.  Affirmed.

Raymond N. Haynes for Plaintiff and Appellant.

Meylan Davitt Jain Arevian & Kim, Raymond B. Kim and Grace C. Lee for Defendants and Respondents.

_____

# INTRODUCTION

Plaintiff filed a civil complaint against defendants alleging unfair competition, violation of Business and Professions Code section 17200 et seq., and breach of implied contract. Plaintiff contended that defendants, in marketing and selling their own brand name fuel conditioner, implied wrongfully that they were selling products supplied by plaintiff. Defendants specially appeared and moved to quash service of summons based on lack of personal jurisdiction. The trial court granted the motion. Plaintiff appealed.

We exercise independent review of the record, find no specific jurisdiction over defendants, and affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Parties*

Plaintiff D-1280X, Inc., doing business as Omstar Environmental Products (Omstar), is a California corporation, with its principal place of business in Wilmington, California. Since 1986, Omstar has been "the exclusive owner" of the formula for a fuel and engine additive known as D-1280X and DX-1 (D-1280X).

Defendant Envirosave Enterprises, LLC (Envirosave) is a limited liability company formed in Delaware and registered in Florida. Its principal place of business is Cape Coral, Florida. Envirosave sells proprietary engine conditioner products for use in internal combustion engines. Its customers are primarily railroad, trucking, and construction companies.

Defendant Don Justice is a principal owner and sole member of Envirosave. He is domiciled in Florida.

2

Defendants Dan Justice, James William Justice (Bill Justice), Alan Justice, and Tonya Justice are at-will employees of Envirosave and do not hold any ownership interest in Envirosave. Justin Bowen is an independent contractor and does not hold ownership interest in Envirosave.

We collectively refer to Envirosave, Don Justice, and the other individuals as defendants.

B. ***Omstar's Civil Complaint***

On March 14, 2023, Omstar filed an unverified civil complaint against defendants for unfair competition, violation of Business and Professions Code section 17200 et seq., and breach of implied contract.

According to the complaint, Omstar has exclusively owned the formula for D-1280X, a trade secret which is sold to others by way of licensing agreements with Omstar.

On November 1, 2008, Omstar entered into a distribution agreement with Lags Distributing, LLC (Lags), a Florida limited liability company. Lags agreed to purchase D-1280X from Omstar and then sell it. We refer to this agreement as the Omstar-Lags agreement. "At the time that Omstar entered into the Agreement with Lags," the managing member of Lags, David Lageschulte (Lageschulte) introduced Don Justice to the principals from Omstar—Richard and Roberta Skaggs (the Skaggs)—and referred to Don Justice as his "partner," which led the Skaggs to believe Don Justice was Lageschulte's partner "in Lageschulte's business venture with Omstar to purchase and sell Omstar's D-1280X."

In March 2009, "about 90 days after Lageschulte entered into the Agreement with Omstar, [Lageschulte] and Don Justice formed Envirosave." On March 12, 2009, Don Justice registered

3

Envirosave in Florida as a limited liability company formed in Delaware. And in April 2009, Omstar granted Lageschulte and Don Justice permission to use the brand name Gamma88 to market and sell Omstar's D-1280X.

On March 8, 2010, Envirosave registered the trade name "Gamma88" with the United States (U.S.) Patent and Trademark Office and specified Ray L. Investment, LLC (doing business as Gamma88, LLC) as the owner. Ray L. Investment is owned and operated by Lageschulte. On October 12, 2010, Ray L. Investment registered the trade name "Gamma88" with the U.S. Patent and Trademark Office.

Lageschulte and Don Justice "marketed and sold D-1280X through [Envirosave] under the label and brand name approved and authorized by Omstar known as 'Gamma88'." In April 2010, "to establish the validity of Gamma88 as the brand name for [D-1280X]," Lags and Envirosave had Gamma88 tested at Southwest Research Institute and the test results identified the tested product as D-1280X. The results were posted on Omstar's website. By posting the test results on Omstar's website, "Lags and Envirosave sought to establish that [D-1280X] branded as 'Gamma88' had been successfully tested [and] had the same properties as [D-1280X]." This "establish[ed] the credibility of Gamma88" without referring to D-1280X per se in the marketing of Gamma88.

In late 2010, Lags initiated arbitration proceedings against Omstar under the Omstar-Lags agreement and asserted that Omstar provided "hundreds of barrels of D-1280X" that were "defective" and "diluted." Omstar believes this was a "transparent attempt to steal the secret formula for D-1280X" because Lageschulte asked the arbitrator to order Omstar to

provide D-1280X's formula so that Lageschulte "and his team of scientists could evaluate" whether what they purchased and received from Omstar was actually D-1280X. The request was denied. Lageschulte represented he spent "over $1,000,000 in three laboratories to determine the ingredients and process of Omstar's D-1280X" to prove the "hundreds of barrels . . . delivered to Lageschulte . . . was not the same high quality." This turned out not to be true, as the arbitrator received evidence confirming that what was delivered to Lageschulte was identical to Omstar's D-1280X. The arbitrator ruled in favor of Omstar. It was agreed Lags and Envirosave would include with any use of "Gamma88" a written indication that Gamma88 was a brand name of Omstar's.

However, neither Lags nor Envirosave ever included any reference to Omstar when using the brand name Gamma88. Instead, Lags and Envirosave "continued to attempt to reverse engineer D-1280X" so that they "would no longer be required to purchase D-1280X from Omstar and, instead, could manufacture a fake product for a cheaper price."

In February 2012, Lageschulte posted an announcement on Omstar's website, including a letter dated February 22, 2012 from Don Justice to Richard Skaggs of Omstar, stating: "An Omstar distributor, [Envirosave], received permission from Omstar to relabel D-1280X . . . as Gamma88." Don Justice indicates in the letter that "to sell to customers in California," Envirosave needed confirmation that D-1280X had been tested and approved by the California Air Resources Board. Omstar provided Don Justice evidence of the Air Resources Board's test results of D-1280X; this "enable[d] Don Justice and Envirosave to sell [D-1280X]—relabeled as 'Gamma88'—in California" which

allowed Envirosave "to retain all of their lucrative customers including W.R. Grace Chemical and CEMEX."

After "four years," Lags and Envirosave successfully created "a cheap replica of D-1280X" and sold it as Gamma88 and E3-Ultra.

While Lageschulte was in charge of Lags and Envirosave, those two entities continued to purchase D-1280X from Omstar. On March 11, 2014, Lageschulte died. "[A]fter the death of Lageschulte, Envirosave stopped purchasing [D-1280X] from Omstar." "It is difficult to determine how many orders for [Gamma88] were being filled with the original [D-1280X] purchased from Omstar [that was] in the Envirosave inventory and how many orders for [Gamma88] were being filled with the fraudulent [Gamma88] that Lageschulte and Don Justice . . . manufactur[ed] in their own contracted facilities." Omstar contends Envirosave "palm[ed] off the fake Gamma88 as [D-1280X]."

After Lageschulte's death, Don Justice and Envirosave "had no legal way to obtain [D-1280X]" as Don Justice "could no longer indirectly obtain D-1280X through" Lags via the Omstar-Lags agreement. Envirosave "never had any separate [d]istribution [a]greement with Omstar to use the brand name 'Gamma88' or to distribute D-1280X branded as Gamma88." When the Omstar-Lags agreement expired in 2014, Don Justice's and Envirosave's right to use the brand name Gamma88 expired as well. Omstar believes Don Justice knew that Envirosave "did not have the right to advertise Gamma88 for sale" and yet "continued to market and sell Gamma88, palming off their fraudulent version of Gamma88 as . . . that produced and marketed when it was [D-1280X]." Don Justice and Envirosave

6

continued to advertise their Gamma88 "as the same version of Gamma88 when it was marketed and sold as [D-1280X]."

Omstar contends that because Envirosave "continu[ed] to sell . . . Gamma88 after the termination of the Omstar-Lags [agreement]," Envirosave and other defendants "entered into an implied agreement in which they agreed to continue to purchase [D-1280X] and sell it under the branded name Gamma88." Defendants breached the agreement by not continuing to purchase D-1280X from Omstar, but instead, "attempting to duplicate the product . . . appropriating the good will and good name of [D-1280X] for their own profit."

Omstar alleged that "*[f]rom and after 2014*, the [d]efendants engaged in unfair competition by deliberately misleading consumers into believing that the fraudulent Gamma88 produced and marketed by Envirosave and [defendants] is the original D-1280X branded and marketed as Gamma88." (Italics added.) Defendants "knowingly engaged in false, misleading, and deceptive advertising" by promoting "the fraudulent [Gamma88] on Envirosave's website as the original Omstar D-1280X" and "palming off the counterfeit Envirosave product as the original Omstar D-1280X."

Based upon "the fraudulent representations on the Envirosave Website and deceptive business practices by Envirosave, Don Justice," and the other defendants, Envirosave "generated over $25,000,000 in sales that should have gone to [Omstar], but was diverted by the illegal palming off scheme utilized by Envirosave and [defendants] while knowingly and intentionally deceiving members of the public and, simultaneously, defrauding and cheating and stealing from Omstar." Omstar requested injunctive relief, damages according

7

to proof but not less than $21,000,000, civil damages of $2,500 per violation of Business and Professions Code section 17200 et seq., punitive damages, attorney fees and costs.

C.     ***Defendants' Motion to Quash Service of Summons***

On May 5, 2023, defendants filed a motion to quash the summons and complaint for lack of personal jurisdiction under Code of Civil Procedure section 418.10, subdivision (a).  Omstar's complaint "is invalid at the outset because minimum contacts do not exist between the [d]efendants and this state."  In the alternative, defendants requested the matter be dismissed or stayed based on forum non conveniens.

Defendants argued the California court lacked both general and specific jurisdiction over the matter.  There is "no basis for exercising general jurisdiction" because Envirosave is a Delaware limited liability company with its principal place of business in Florida.  The facts also show the domicile of the individual defendants is Florida, or Missouri in the case of Justin Bown, and that none of the individual defendants "have any meaningful ties to the State of California."

Defendants also argued "no basis for exercising specific jurisdiction" existed because neither Envirosave nor the individual defendants have engaged in any activities in California by which they purposefully availed themselves of the benefits and protections of California law.  Defendants do not own property in California, "do not conduct business in California or buy or sell products in California."  Envirosave's offices are in Florida and its employees work and reside in Florida.  The activities for which Omstar seeks to assert claims relate to Envirosave's marketing and sale of products in states other than California.  There is "no connection between Omstar's purported

8

claims and any forum-related contacts" by defendants.

Defendants further argue Omstar "sets forth a number of false, misleading, and irrelevant allegations that fail to state valid claims." Omstar's complaint falsely alleged Don Justice was a "partner" in Lags and that Lageschulte was an owner of Envirosave. Additionally, "[c]ontrary to what is falsely alleged in the [c]omplaint, the only individual who holds an ownership interest in Envirosave is Don Justice."

Many declarations were provided in support of the motion to quash.

Don Justice's declaration provides that his domicile has been Cape Coral, Florida since 2004. He has never been domiciled in California. He is the sole member of Envirosave. Envirosave is a limited liability company formed in Delaware and registered in Florida; its principal place of business is also in Florida and it has no office outside of Florida. Envirosave has no contacts with California, has no customers in California, does not purchase supplies from any vendor in California, and does not market or offer its products for sale in California. All of Envirosave's employees work and reside in Florida, except for Justin Bowen, an independent contractor who resides in Missouri.

Contrary to the allegations of Omstar's complaint, Don Justice also declared that he "was never a 'partner' in Lags and never held any ownership interest in Lags [nor] in Ray L. Investment, LLC [also] owned by . . . Lageschulte." He stated "Lageschulte never was a member of Envirosave or held any ownership interest in Envirosave." He also stated the Gamma88 was first created and registered with the United States Patent and Trademark Office by Ray L. Investment not Omstar.

9

Envirosave acquired from Ray L. Investment the ownership right to use the name Gamma88 in 2019.

Prior to 2014, Envirosave purchased fuel additive products from Lags, not Omstar. Envirosave is not a party to the Omstar-Lags agreement. "Although I understand that Lags acquired the products it sold to Envirosave from [Omstar], Envirosave did not purchase products directly from Omstar during the time it purchased products from Lags." Envirosave stopped purchasing from Lags in 2014 when Lageschulte died. "For a brief period of time after [Lageschulte's] death, Envirosave made a limited amount of purchases with Omstar, but then began purchasing engine conditioner products from a different company" that is "not located in California." Envirosave has not directly or indirectly acquired any products manufactured by Omstar since the transition period following Lageschulte's death in 2014. Envirosave and Don Justice were not parties to any arbitration between Lags and Omstar.

Dan Justice's declaration provides that his domicile is Cape Coral, Florida. He has never been domiciled in California. He is an at-will employe and vice president of Envirosave. Dan owns no ownership interest in Envirosave. Dan has had no affiliation with Lags or Ray L. Investment.

Bill Justice's declaration provides that his domicile is Cape Coral, Florida, except for a seven-month temporary stay in California in 2016. During those seven months, Bill was not employed by Envirosave and did not perform any actions on its behalf. Bill is an at-will employee of Envirosave. He owns no ownership interest in Envirosave and has had no affiliation with Lags or Ray L. Investment.

Alan Justice's declaration provides that for the past 10½ years his domicile is Cape Coral, Florida. He has never been domiciled in California. He is an at-will employee of Envirosave. He is the operations manager. He never held any ownership interest in Envirosave and has had no affiliation with Lags or Ray L. Investment.

Tonya Justice's declaration provides her domicile is Cape Coral, Florida. She has never been domiciled in California. She is an at-will employee and vice president of Envirosave. She owns no ownership interest in Envirosave and has had no affiliation with Lags or Ray L. Investment.

Justin Bowen's declaration provides his domicile is St. Louis County, Missouri. He has never been domiciled in California. He is an independent contractor who performs services for Envirosave. He is not an employee of Envirosave. He has never held any ownership interest in nor had any affiliation with Lags or Ray L. Investment.

D.   ***Omstar's Opposition to the Motion to Quash***

On July 3, 2023, Omstar filed its opposition to the motion to quash. Omstar argued the California court has specific jurisdiction over defendants because they "have had sufficient minimum contacts with California to justify the exercise of jurisdiction over each of the[m]." These contacts include "ordering, accepting delivery of, and paying for the products from [Omstar] and sold by [d]efendants as its own"; "utilizing the contracts, signed in California that gave [d]efendants access to the product they were 'palming off'"; and "actively marketing its 'palmed off' products to California customers, negatively affecting [Omstar's] business." The "impact of [d]efendants in stealing [Omstar's] formula occurred predominantly in California." Don

11

Justice "spent time in California obtaining information about [Omstar's] formula by visiting the facility that blended [Omstar's] product." Envirosave "ordered product from California . . . and paid for it in California."

In support of its opposition, Omstar submitted the declaration of Richard Skaggs. Skaggs stated that since 1986, Omstar has been the exclusive owner of the formula D-1280X, which is a "trade secret manufactured and blended in California," and sold by Omstar under a license agreement.

"At the time that Omstar entered into the [Omstar-Lags agreement]," Lageschulte "introduced the principals in Omstar, me and my wife Roberta Skaggs to . . . Don Justice as his 'partner' while Don Justice was standing there and heard the comment. He made no effort at all to contradict that comment by Lageschulte." Richard Skaggs "understood Lageschulte to mean that . . . Don Justice was Lageschulte's 'partner' in Lageschulte's business ventures with Omstar to purchase and sell Omstar's D-1280X."

By March 2009, after the Omstar-Lags agreement was signed, Lags began purchasing D-1280X from Omstar. "Those purchases were ordered from Omstar's California office, and delivered to Envirosave at the blending facility, Lubricating Specialties, where the [D-1280X] product was blended . . . in Pico Rivera, California." The purchase orders placed by Lags and "the bills of lading showing delivery of [D-1280X] by Omstar to Lags and Envirosave" were included as exhibits.[1]

---

[1] Contrary to Omstar's description of what the exhibits are, both the "bill to" and "ship to" portions of the bills and/or invoices specified "LAGS Distributing, LLC"—and not Envirosave. Further, the bill of lading dated September 15, 2015 shows

12

Omstar also submitted supporting declarations of Gino Grajeda and Scott Chavez.

E. ***Defendants' Reply and Evidentiary Objections***

On June 22, 2023, defendants filed their reply. In support of its reply, defendants attached another declaration of Don Justice, which included the following additional information: Envirosave is the owner of the registered trademark Gamma88, which was "never used by" Omstar. The prior users of the trademark were Lags and Ray L. Investment. Also, page 7 of the Omstar-Lags agreement refutes Skaggs's own statement that Omstar had ownership rights to Gamma88, as the agreement clearly states the "Distributor (Lags) has the right to market and sell under his own markings and trademarks." (Italics and some capitalization omitted.)

Contrary to Skaggs's statement that Lags's purchase of D-1280X was delivered to Envirosave's blending facility Lubricating Specialties in Pico Rivera, California, Envirosave has "no affiliation or connection with" Lubricating Specialties. Skaggs discussed testing conducted at the Southwest Research Institute but "Envirosave never funded that test or supplied product for that test."

Don Justice made a visit in 2012 to Omstar's office in California but "[t]hat visit occurred more than a decade ago and has no relationship to [Omstar's] claims in this lawsuit, which are based on Envirosave's current sales of its [Gamma88] . . . products that occurred after 2015."

---

Lubricating Specialties in California shipped additives to Envirosave in Florida, with a billing statement to Priority 1 Inc. in Arkansas.

Don Justice's February 22, 2012 letter to Skaggs asked for information about the California Air Resources Board's approval of Omstar's products. The two companies mentioned—CEMEX and W.R. Grace—are both located outside of California and Envirosave never sold products used in California to them.

In addition, defendants filed lengthy evidentiary objections to the admissibility of portions of the declarations of Richard Skaggs, Gina Grajeda, and Scott Chavez.

Omstar filed a response to defendants' evidentiary objections.

F.    ***The Trial Court's Ruling***

On July 27, 2023, the trial court heard oral argument and granted the motion to quash. The minute order states no court reporter was present at that hearing, and so no reporter's transcript is part of the record on appeal.

Later that same day, the court issued a nunc pro tunc order, stating: "It appearing to the [c]ourt that through inadvertence and/or clerical error, the minute order [of earlier today] does not properly reflect the [c]ourt's order." The minute order was corrected by adding the court's ruling on defendants' evidentiary objections. The trial court overruled objection Nos.[2] 1, 4, 8, 16, 21, 27, 40–45, 48–49, 53–58, 75, 78, 81, 85–87, and 89–90. The trial court sustained objection Nos. 2, 3, 5–7, 9–15, 17–20, 22–26, 28–39, 46–47, 50–52, 59–62, 64–74, 76–77, 79–80, 82–

---

[2]    Although the objections were unnumbered, the court "determined there are 92 paragraphs/objections" and referred to them accordingly.

14

83, 84, 88, and 91–92.[3]  As for objection No. 63, the trial court sustained it on lack of foundation grounds.  "Here, the [c]omplaint alleges that 'after the death of Lageschulte, Envirosave stopped purchasing [D-1280X] from Omstar.' " "However, in his declaration . . . , Omstar's officer and director Richard Skaggs testifies that after Lageschulte died in 2014, 'Don Justice continued to buy [D-1280X], and the only way he could buy it was based on the Omstar-Lags agreement of which he confirmed he was part in the February 22, 2012 letter.' [Citation.] To the extent [Omstar] is implying Don Justice was acting as Envirosave's agent, Skaggs's testimony contradicts the allegation in the [c]omplaint concerning the purchase of D-1280X after Lageschulte's death."

Omstar timely appealed.

---

[3]     Relevant for purposes of our appeal, the sustained evidentiary objections made the following portion of Richard Skaggs' declaration inadmissible:

Lageschulte introduced Don Justice as his "partner" to the principals in Omstar (the Skaggs) while Don Justice stood there and heard the comment.  "He made no effort to all to contradict that comment by Lageschulte."  Richard Skaggs "understood Lageschulte to mean that [defendant] Don Justice was Lageschulte's 'partner' in Lageschulte's business ventures with Omstar to purchase and sell Omstar's D-1280X."

Lags's purchases "were ordered from Omstar's California office, and delivered to Envirosave at the blending facility, Lubricating Specialties, where the [D-1280X] product was blended, located in Pico Rivera, California."

## DISCUSSION

Omstar presents two arguments on appeal. First, Omstar contends defendants had sufficient minimum contacts with California to justify the exercise of jurisdiction over each of them. Second, Omstar argues the trial court erroneously excluded admissible evidence in its order sustaining defendants' evidentiary objections.

### A.    *Standard of Review*

We review the trial court's order granting a motion to quash service for lack of personal jurisdiction "de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections were made and sustained." (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65–66.) Evidence in support of jurisdictional facts or their absence may be in the form of declarations. (*Evangelize China Fellowship, Inc. v. Evangelize China Fellowship* (1983) 146 Cal.App.3d 440, 444.) "[W]here the evidence of jurisdictional facts is *not* conflicting, the question of whether a defendant is subject to personal jurisdiction is one of law." (*Elkman v. National States Ins. Co.* (2009) 173 Cal.App.4th 1305, 1313 (*Elkman*).) However, when there is a conflict in the evidence and/or declarations, resolution of the conflict by the trial court will not be disturbed on appeal if the determination is supported by substantial evidence. (*Evangelize China Fellowship*, at p. 444.)

We apply the abuse of discretion standard when reviewing a trial court's rulings on evidentiary objections. (*Geragos v. Abelyan* (2023) 88 Cal.App.5th 1005, 1021.)

16

B.    ***Absence of a Reporter's Transcript***

Affirmance of the order appealed from may be warranted in the absence of a reporter's transcript when such a transcript is necessary for meaningful review.  (See, e.g., *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186–187 (*Foust*) [appeal requiring consideration of testimony could not proceed in the absence of a reporter's transcript or a settled statement]; *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574 [declining to review the adequacy of an award of damages absent a reporter's transcript or settled statement of the damages portion]; *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 447–448 ["The absence of a record concerning what actually occurred at the trial precludes a determination that the trial court abused its discretion"].)  It is an appellant's burden to affirmatively demonstrate error through an adequate record. (*Ballard v. Uribe*, at p. 574; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*).)

Because we review an order granting a motion to quash service for lack of personal jurisdiction de novo and must conduct an independent analysis of our own, we can resolve the appeal from the ruling on the motion in the absence of a reporter's transcript.  "While a record of the hearing would have been helpful to understand the trial court's reasoning, it is not necessary here where our review is de novo and the appellate record includes the trial court's written orders and all . . . materials germane to Appellant['s] motion."  (*Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 933.)  The absence of a reporter's transcript is not fatal to Omstar's appeal of the order granting the motion to quash service.

The same, however, cannot be said for Omstar's appeal of the order sustaining evidentiary objections, which, Omstar contends, was an abuse of discretion. The California Rules of Court require an appellant to provide a reporter's transcript if "an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court." (Cal. Rules of Court, rule 8.120(b).) Where the standard of review is abuse of discretion, a transcript or settled statement is in many cases indispensable. (*Southern California Gas Co. v. Flannery* (2016) 5 Cal.App.5th 476, 483.) The cardinal rule of appellate review is judgments and orders of the trial court are presumed correct and " '[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham*, *supra*, 2 Cal.3d at p. 564.)

In the present case, Omstar did not provide a reporter's transcript of the hearing held July 27, 2023 or a settled or agreed statement memorializing what transpired during the hearing. (Cal. Rules of Court, rules 8.134 & 8.137.) The minute order states the trial court heard oral argument before issuing its order. However, we do not know any more than that. Without an adequate record, there is no basis for finding the trial court abused its discretion in sustaining defendants' objections to the declarations provided by Omstar as well as the court's sua sponte objection. (*Rhule v. WaveFront Technology, Inc.* (2017) 8 Cal.App.5th 1223, 1229, fn. 5 [explaining that when written rulings are "quite succinct," as is the evidentiary ruling here, "a reliable record of what transpired at the hearings is

18

indispensable" for appellate review].) The record includes only the minute orders, which do not illuminate whether the evidentiary objections were discussed. It appears highly probable there was a discussion as the trial court raised its own sua sponte objection to the evidence. We are unable to review the evidence presented at that hearing and must assume the parties presented testimony or evidence from which the trial court properly sustained defendants' evidentiary objections. (*Foust*, *supra*, 198 Cal.App.4th at pp. 186–187.) "In numerous situations, appellate courts have refused to reach the merits of an appellant's claims because no reporter's transcript of a pertinent proceeding or a suitable substitute was provided." (*Id.* at p. 186.) " ' "[I]f the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." ' " (*Id.* at p. 187.) The same is true here as to Omstar's appeal of the trial court's order on the evidentiary objections.

C.  ***The Motion to Quash***

1.  **Applicable Legal Principles**

California courts "may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10.) The exercise of jurisdiction over a nonresident defendant "comports with the requirements of the due process clause of the federal Constitution if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate ' "traditional notions of fair play and substantial justice." ' " (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444 (*Vons*), quoting *Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310, 316.)

Where a nonresident defendant challenges jurisdiction by way of a motion to quash, plaintiff bears the burden of establishing by a preponderance of the evidence that minimum contacts exist between the defendant and forum state to justify imposition of personal jurisdiction.  Plaintiff must present facts demonstrating the conduct of defendants related to the pleaded causes of action is such as to constitute constitutionally cognizable minimum contacts.  (*Elkman*, *supra*, 173 Cal.App.4th at pp. 1312–1313.)

Personal jurisdiction may be general or specific.  (*Vons*, *supra*, 14 Cal.4th at p. 445.)  General jurisdiction is sometimes called "all-purpose" and specific jurisdiction is sometimes called "case-linked."  (*Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.* (2017) 582 U.S. 255, 262 (*Bristol-Myers*).)

Here Omstar contends only specific jurisdiction exists.  When determining whether specific jurisdiction exists, courts consider the "relationship among the defendant, the forum, and the litigation."  (*Shaffer v. Heitner* (1977) 433 U.S. 186, 204.)  A court may exercise specific jurisdiction over a nonresident defendant if a three-prong test is met: (1) "the defendant has purposefully availed himself or herself of forum benefits" (*Vons*, *supra*, 14 Cal.4th at p. 446); (2) "the 'controversy is related to or "arises out of" [the] defendant's contacts with the forum' " (*ibid*., quoting *Helicopteros Nacionales de Colombia v. Hall* (1984) 466 U.S. 408, 414); and (3) "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " (*Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 476.)

## 2. **The Trial Court Correctly Determined It Cannot Exercise Specific Jurisdiction over Defendants.**

To exercise specific jurisdiction over a claim, "there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.' [Citation.] When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." (*Bristol-Myers*, *supra*, 582 U.S. at p. 264.) In other words, specific jurisdiction depends on "the quality and nature of the defendant's forum contacts in relation to the particular cause of action alleged." (*Anglo Irish Bank Corp., PLC v. Superior Court* (2008) 165 Cal.App.4th 969, 978.)

Applying these standards to the facts of this case, we conclude California may not exercise specific jurisdiction over defendants.

### a. Did defendants purposefully avail themselves of forum benefits?

We begin with the purposeful availment prong of the test. " 'The purposeful availment inquiry . . . focuses on the defendant's intentionality. [Citation.] This prong is only satisfied when the defendant purposefully and voluntarily directs [its] activities toward the forum so that [it] should expect, by virtue of the benefit [it] receives, to be subject to the court's jurisdiction based on' [its] contacts with the forum." (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 269.) "[T]he underlying rationale of all the purposeful availment tests is that 'it is fair to subject defendants to specific jurisdiction, because their forum

21

activities should put them on notice that they will be subject to litigation in the forum.' " (*Gilmore Bank v. AsiaTrust New Zealand Ltd.* (2014) 223 Cal.App.4th 1558, 1573 (*Gilmore Bank*).)

Here, Omstar argues defendants purposefully availed themselves of the California forum and its benefits. However, Omstar failed to provide any argument or facts as to minimum contacts with California by individual defendants Dan Justice, Bill Justice, Tonya Justice, Alan Justice, and Justin Bowen. The evidence set out in these individuals' declarations support the conclusion that all but Justin Bowen are domiciled in Cape Coral, Florida. Justin Bowen is domiciled in Missouri. None have any ownership interest in Envirosave and are at-will employees or independent contractors. While Bill Justice temporarily stayed in California for seven months in 2016, he was not employed by Envirosave at that time and performed no actions on its behalf.

As for Don Justice, the evidence Omstar refers to in its opening brief is inadmissible, as it arises out of information from Richard Skaggs's declaration, to which objection Nos. 3, 5, 17, 18, 19, 20 were sustained. More specifically, the inadmissible evidence Omstar refers to is the introduction of Don Justice to Omstar's principals, the Skaggs, by Lageschulte as his "partner." Plus, Don Justice stated in his declaration that he was never Lageschulte's partner, never held any ownership interest in Lags or Ray L. Investment, and conversely, Lageschulte never had any ownership interest in Envirosave.

Based on the record before us, we find individual defendants Don Justice, Dan Justice, Bill Justice, Tonya Justice, Alan Justice, and Justin Bowen did not purposefully avail themselves of California's benefits.

22

As for Envirosave, the facts show Envirosave is a limited liability company formed in Delaware and registered in Florida; its principal place of business is also in Florida and it has no office outside of Florida. Envirosave has no contacts with California, has no customers in California, does not purchase supplies from any vendor in California, and does not market or offer its products for sale in California. All of Envirosave's employees work and reside in Florida, except for Justin Bowen, who resides in Missouri.

Omstar argues Envirosave purposefully availed itself of the California forum via two contacts. First, Omstar refers to Lags's purchases from Omstar's California office which were delivered to Envirosave at the Lubricating Specialties blending facility in Pico Rivera, California. This contention is based on evidence in Skaggs's declaration found inadmissible by the trial court and is not supported by substantial evidence.

Second, Envirosave placed two orders directly with Omstar during the transition period in 2014 immediately after Lageschulte's death. This is supported by defendant Don Justice's declaration in which he stated: "For a brief period of time after [Lageschulte's] death, *Envirosave made a limited amount of purchases with Omstar*, but then began purchasing engine conditioner products from a different company" that is "not located in California." (Italics added.) Envirosave has not "directly or indirectly acquired" any products manufactured by Omstar since "the transition period" following Lageschulte's death in 2014. This is the only connection we see between Envirosave and the California forum. Purchasing a product from a California business entity may support a finding that Envirosave purposefully availed itself of California's benefits. We

23

find, however, that two orders placed in 2014 during a transition period does not constitute substantial evidence to support a finding in favor of Omstar on the first prong of the analysis. Moreover, we note that Omstar's complaint contradicts these two purchases as it states: "[A]fter the death of Lageschulte, Envirosave stopped purchasing [D-1280X] from Omstar." We find the first prong necessary to assert specific jurisdiction has not been satisfied.

b. <u>Does the controversy relate to or arise out of defendants' contacts with the forum?</u>

This prong is whether the current controversy is "related to or arise[s] out of the defendant's contacts with the state." (*Gilmore Bank*, *supra*, 223 Cal.App.4th at p. 1568, italics omitted.) In *Vons*, our Supreme Court explained that this second prong is satisfied if "there is a *substantial nexus or connection* between the defendant's forum activities and the plaintiff's claim." (*Vons*, *supra*, 14 Cal.4th at p. 456, italics added.) "A claim need not arise directly from the defendant's forum contacts in order to be sufficiently related to the contact to warrant the exercise of specific jurisdiction. Rather, as long as the claim bears a substantial connection to the nonresident's forum contacts, the exercise of specific jurisdiction is appropriate." (*Id.* at p. 452.)

We find that the underlying controversy, namely, Omstar's unfair competition and business practices claims, do not arise from any contacts by defendants with the forum.

First, the only California contacts by defendants are 1) Bill Justice's temporary stay in California for seven months in 2016; and 2) Envirosave's "limited amount of purchases" from Omstar in 2014 after Lageschulte's death while Envirosave transitioned

24

to purchasing engine conditioner products from a different company not located in California.

We address each.

Bill's Justice's seven-month stay in California was while he was not employed by Envirosave and performed no actions on its behalf. Omstar's claims of unfair competition and business practices are not related to nor do they arise out of Bill Justice's temporary stay in California.

Envirosave's two orders with Omstar in 2014 for D-1280X do not create a nexus between California and Omstar's claims about Envirosave. Omstar's complaint expressly states: "*From and after 2014*, the [d]efendants have engaged in unfair competition by deliberately misleading consumers into believing that the fraudulent Gamma88 produced and marketed by Envirosave and [defendants] is the original D-1280X branded and marketed as Gamma88." The record includes evidence that Envirosave transitioned to purchasing the products from another company not located in California as of 2015. Thus, the undisputed evidence before the trial court was that in 2015 Envirosave began purchasing product from another company (and then allegedly palmed the product off to the public as D-1280X). Two purchases made in 2014 of Omstar's product have nothing to do with Envirosave's alleged unfair competition and breach of contract, which commenced in 2015 when Envirosave started buying another product from another supplier. We cannot say that substantial evidence supports a finding that the controversy arises out of two transitional purchases in 2014, purchases Omstar's allegations nonetheless refute. The second prong is also not satisfied.

Given Omstar's failure to satisfy the first two prongs, we need not address the third prong.  (See *Integral Development Corp. v. Weissenbach* (2002) 99 Cal.App.4th 576, 591 [only after "a plaintiff has shown the requisite minimum contacts to support jurisdiction, the burden shifts to defendant to show jurisdiction is not reasonable."].)

## DISPOSITION

The trial court's order is affirmed.  Respondents are awarded costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, P. J.

We concur:



GRIMES, J.



VIRAMONTES, J.